1

2

3

4

**E-FILED on** ___7/25/05___

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

| | |
|---|---|
| HVAC SALES, INC., ADVANCED MICROTHERM, INC. AND JOHN KARAMANOS, | No. C-04-03615 RMW |
| Plaintiffs, | ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING MOTION FOR ATTORNEY'S FEES |
| v. | **[Re Docket Nos. 21, 23, 24, 29]** |
| ZURICH AMERICAN INSURANCE GROUP, MARYLAND CASUALTY COMPANY, ZURICH AMERICAN INSURANCE COMPANY, LAWSON-HAWKS INSURANCE ASSOCIATION, CRAIG PAPPAS, AND DOES 1 through 50, inclusive, | |
| Defendants. | |
| JOHN KARAMANOS, | |
| Cross-Complainant, | |
| v. | |
| AMCO INSURANCE COMPANY, AMERICAN ECONOMY INSURANCE COMPANY, and DOES 51 through 100, inclusive, | |
| Counterdefendants. | |

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

1   HVAC Sales, Inc. ("HVAC"), Advanced Microtherm, Inc. ("AMT"), and John Karamanos

2   ("Karamanos") (collectively "plaintiffs") seek to remand a lawsuit and obtain attorney's fees.  Defendants

3   Zurich American Insurance Group and Zurich American Insurance Company ("Zurich"), Maryland Casualty

4   Company ("Maryland"), Lawson-Hawks Insurance Assocation ("Lawson-Hawks"), and Craig Pappas

5   ("Pappas") (collectively "Zurich and Maryland") also move to remand.[1]  Cross-defendants AMCO

6   Insurance Company ("AMCO") and American Economy Insurance Company ("SAFECO") seek to sever

7   one cross-claim and then remand the rest of the lawsuit.  The court has read the moving and responding

8   papers and considered the arguments of counsel.  For the reasons set forth below, the court (1) grants

9   plaintiffs' and Zurich and Maryland's motion to remand, (2) denies AMCO and SAFECO's motions to

10  sever, and (3) denies plaintiffs' motion for attorney's fees.

11  ## I.  BACKGROUND

12  In April 2002 AMT and HVAC brought a lawsuit in the Superior Court for the County of San

13  Francisco alleging that various defendants engaged in illegal conduct related to public works projects ("the

14  underlying public works case").[2]  Three defendants—Price Industries, Inc. ("Price"), Norman Wright

15  Mechanical Equipment Company ("NSW"), and Ove Arup and Partners California Limited ("Ove

16  Arup")—then cross-complained against plaintiffs for defamation ("the defamation case").[3]  Borovsky Decl.

17  Supp. Mot. Sev. ("Borovsky Decl.") Exs. C-E.  Plaintiffs tendered the cross-complaints to Zurich and

18  Maryland.  Pappas, who had initially obtained plaintiffs' insurance policies on behalf of Lawson-Hawks,

19  received the tenders.  Plaintiffs allege that Pappas incorrectly informed them that he had immediately

20  forwarded the Price and NSW cross-complaints to the carriers.  Plaintiffs claim that it was not until August

21  2003 that they finally received two reservation of rights letters from Zurich.  The letters purportedly

---

[1]   Zurich and Maryland style their motion as one to "remand and dismiss."  Zurich and Maryland apparently believe that the court must dismiss the action after remanding it.  Yet the court could not do so: after remanding the case, the court would have nothing to dismiss.  *See, e.g., Seedman v. U.S. Dist. Court for Cent. D. of Cal.*, 837 F.2d 413, 414 (9th Cir. 1988) ("[o]nce a district court certifies a remand order to state court it is divested of jurisdiction and can take no further action on the case"); *Mirto v. Amerian Intern. Group, Inc.*, 2005 WL 827093, *3 (N.D. Cal. 2005) (distinguishing between remand and dismissal).

[2]   The case has since been removed to federal court.

[3]   Price did not name AMT as a cross-defendant.

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

2

1   admitted that the defamation and abuse of process causes of action in the defamation case implicated

2   insurance defense coverage as to HVAC and Karamanos but denied that AMT was covered by the policy.

3    Plaintiffs thus sued Zurich, Maryland, Pappas, and Lawson-Hawks in Superior Court for the County of

4   Santa Clara for, *inter alia*, breach of contract, bad faith, and failure to pay for independent counsel ("the

5   bad faith case").

6           In July 2003 Zurich, Maryland, Pappas, and Lawson-Hawks cross-complained against HVAC,

7   AMT, Karamanos, NSW, and Ove Arup for declaratory relief and reimbursement ("the Zurich and

8   Maryland cross-complaint").  Borovsky Decl. Ex. F.  The Zurich and Maryland cross-complaint seeks

9   reimbursement for all defense expenses paid in excess of which it is found to owe plaintiffs in the bad faith

10  case.

11          On July 8, 2004 Karamanos filed a cross-complaint against AMCO and SAFECO ("the

12  Karamanos cross-complaint").  Borovsky Decl. Ex. G.  Karamanos alleges that AMCO and SAFECO

13  have a duty to defend or indemnify him based on insurance policies carried by his previous employer,

14  Microtherm Systems, Inc. ("MSI").  Karmanaos claims that he tendered notice of the NSW cross-

15  complaint to AMCO and SAFECO in September 2003 and that both carriers refused to defend or

16  indemnify him.  Karamanos seeks indemnity from AMCO and SAFECO in the event that the Zurich and

17  Maryland cross-complaint succeeds.

18          On August 26, 2004 AMCO and SAFECO attempted to remove the Karamanos cross-complaint

19  to federal court.  However, the Superior Court removed the entire state court action, including the

20  Karamanos cross-complaint, the Zurich and Maryland cross-complaint, and the bad faith case ("the entire

21  dispute").  Plaintiffs move this court to (1) remand the entire dispute and (2) award them attorney's fees

22  incurred while litigating remand issues.  Likewise, Maryland and Zurich move to dismiss the entire dispute

23  and remand it to state court.  SAFECO and AMCO move to (1) sever the Karamanos cross-complaint

24  and keep it in federal court and (2) remand the bad faith case and the Zurich and Maryland cross-complaint

25  to state court.

26

27

28

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

## II. ANALYSIS

### A.   Legal Standard

28 U.S.C. § 1441(a) entitles "defendants" to remove cases to federal court:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

However, 28 U.S.C. § 1447(c) provides that, after removal, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[4]  Of course, there are two means by which a litigant can invoke federal subject matter jurisdiction.  The first is federal question jurisdiction.  *See* 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  It is undisputed that this case does not involve an issue of federal substantive law.  The second is diversity jurisdiction.  *See* 28 U.S.C. § 1332 ("[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States").  It is also undisputed that (1) the bad faith case does not qualify for diversity jurisdiction,[5] (2) the entire dispute does not qualify for diversity jurisdiction,[6] but (3) the Karamanos cross-complaint, standing alone, would qualify for diversity jurisdiction.[7]

---

[4]      "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

[5]      Of course, "[f]or a case to qualify for federal jurisdiction under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship between the parties opposed in interest."  *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181 (9th Cir. 2004) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)).  The bad faith claim does not enjoy complete diversity because Karamanos, HVAC, AMT, Pappas, and Lawson-Hawks are all California residents.

[6]      As noted in footnote 4, the case involves California residents on both sides and thus lacks complete diversity.

[7]      AMCO is an Iowa corporation with its principal place of business in Iowa, SAFECO is an Indiana corporation with its principal place of business in Washington, Karamanos is a California resident, and the amount in controversy allegedly exceeds $75,000.

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

1

**B.      Motions to Remand and Sever**

2        Plaintiffs and Zurich and Maryland move to remand the entire dispute to state court on the grounds

3   that (1) cross-defendants such as AMCO and SAFECO cannot remove a case to federal court and (2) the

4   lack of diversity in either the bad faith case or the entire dispute deprives this court of subject matter

5   jurisdiction.  AMCO and SAFECO argue that this court should sever the Karamanos cross-complaint from

6   the bad faith case and the Zurich and Maryland cross-complaint under Federal Rule of Civil Procedure 21.

7   That provision states that "[m]isjoinder of parties is not ground for dismissal of an action" and empowers

8   district courts (1) to drop or add parties "on such terms as are just" and (2) to sever "[a]ny claim against a

9   party."  Fed. R. Civ. P. 21.

10               **1.      Whether Removal Was Proper**

11       The Ninth Circuit has declined to rule on "the interesting question whether third-party defendants

12  are defendants for purposes of the removal statute."  *O'Halloran v. University of Washington*, 856 F.2d

13  1375, 1381 (9th Cir. 1988).  However, "the majority view is that the determination of who is a defendant is

14  determined by the original complaint, not subsequent third or fourth-party complaints."  *Schmidt v.*

15  *Association of Apartment Owners of Marco Polo Condominium*, 780 F.Supp. 699, 702 (D. Haw.

16  1991).  *Schmidt* reasoned that Congress could easily have chosen to include third-party defendants in

17  section 1441, but did not:

18            We believe that the reference in the general removal statute, [section] 1441, is only to [the]
             plaintiff's defendants and does not include such defendants as third-party defendants,
19            cross-claim defendants, and other parties that are not defending a claim asserted against
             them by the plaintiff. . . .  If the plaintiff and the plaintiff's defendants must, or have chosen
20            to, adjudicate their suit in a state forum, we fail to find any statutory right clearly given to
             other type defendants, by the general removal [statute], to choose a federal forum.
21
22  *Id*. (quoting 1A Moore's Federal Practice ¶¶ 0.157[7] (1989)) (alterations supplied by *Schmidt*).

23  Numerous courts in the Northern District have agreed with *Schmidt*.  *See, e.g., Ciolino v. Ryan*, 2003

24  WL 21556959 *3 (N.D. Cal. 2003) ("[a]s there is no reason to diverge from this well-established

25  approach, the [c]ourt finds that  . . . a third-party defendan[t] cannot remove this case under section

26  1441(a)); *Gartec v. Joseph Enterprises, Inc.*, 2002 U.S. Dist. LEXIS 21110, *3 (N.D. Cal. 2002) ("a

27  third party defendant . . . lacks the power of removal"); *Saeilo Machinery (USA), Inc. v. Hirdes Freight,*

28  *Ltd.*, 2000 WL 1205338, *2 (C.D. Cal. 2000) ("the court adopts the majority view that cross-defendants

1    are not allowed to remove a case"); *Cross v. Kaiser Foundation Hospitals*, 1998 WL 737998 *1 (N.D.

2    Cal. 1998) ("cross-defendants and third-party defendants are not allowed to remove"); *Orosco v. Royal*

3    *Roofing Co., Inc.*, 1997 WL 724456 *1 (N.D. Cal. 1997) (finding third-party defendant's "petition for

4    removal pursuant to section 1441(a) . . . improper").

5          AMCO and SAFECO argue that *Motor Vehicle Cas. Co. v. Russian River County Sanitation*

6    *Dist.*, 538 F. Supp. 488, 491 (C.D. Cal. 1981), holds otherwise.  *Motor Vehicle Casualty* held that "the

7    right of removal under 28 U.S.C. [section] 1441(c) should not depend on the procedural accident that a

8    defendant was brought in as a third-party under a particular state's procedural law."  *Id*. at 491.  Central to

9    the court's conclusion was its perception that "[t]he reasons advanced in favor of restricting a defendant

10   from removing are based more on an unarticulated bias against the 'expansion' of removal jurisdiction than

11   they are grounded in logic and commonsense."  *Id*. at 492.  In 1990, Congress explicitly articulated this

12   "bias," limiting removal under section 1441(c) to "separate and independent" claims that invoked federal

13   question jurisdiction.  *See* Pub. L. 101-650, § 312.[8]  Because Congress overruled one of *Motor Vehicle*

14   *Casualty*'s key premises, the case has dubious precedential value.  Indeed, other Northern District courts

15   have disagreed with it.  *See Ciolino*, 2003 WL 21556959 *4 ("the abstract position for which *Motor*

16   *Vehicle Casualty* arguably stands has largely been abandoned"); *Saeilo*, 2000 WL 1205338 *3 (citing

17

---

18       [8]    At the time *Motor Vehicle Casualty* was decided, section 1441(c) permitted defendants
19   to remove "separate and independent" claims on the grounds of both federal question and diversity
     jurisdiction:

20       Whenever a separate and independent claim or cause of action, which would be
21       removable if sued upon alone, is joined with one or more otherwise non-removable claims
         or causes of action, the entire case may be removed and the district court may determine
22       all issues therein, or, in its discretion, may remand all matters not otherwise within its
         original jurisdiction.

23   *Id*. at 492 n.12.  However, in 1990, Congress limited removal under section 1441(c) to claims that invoked
24   federal question jurisdiction:

25        Whenever a separate and independent claim or cause of action *within the jurisdiction*
         *conferred by section 1331 of this title* is joined with one or more otherwise
26       non-removable claims or causes of action, the entire case may be removed and the district
         court may determine all issues therein, or, in its discretion, *may remand all matters in*
27       *which State law predominates*.

28   28 U.S.C. § 1441(c) (emphasis added).

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

6

1     *Motor Vehicle Casualty* and "declin[ing] to adopt this minority view").  No court has ever cited it

2     favorably.  Accordingly, AMCO and SAFECO could not have properly removed the entire dispute or the

3     Karamanos cross-complaint.[9]

            **2.**       **Whether the Court Should Nevertheless Sever the Karamanos Cross-Complaint**

4

5

6          However, AMCO and SAFECO argue that this case is sufficiently analogous to the "sham

    defendant" doctrine to warrant considering the merits of their motion to sever.  Alternatively, AMCO and

7     SAFECO urge this court to apply the "fraudulent misjoinder" doctrine recognized by the Eleventh Circuit in

8     *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996).[10]  Courts apply the sham

9     defendant doctrine when a plaintiff brings a wholly un-meritorious cause of action against a resident

10     defendant in order to destroy diversity jurisdiction.  "Joinder of a non-diverse defendant is deemed

11     fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f

12     the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according

13     to the settled rules of the state.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)

14     (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

15          The fraudulent misjoinder doctrine is essentially an application of the sham defendant doctrine.  In

16     *Tapscott*, plaintiffs joined two "classes" of defendants under Federal Rule 20—those involved with "the

17     sale of 'service contracts' on automobiles" ["the automobile class"] and those involved with "'service

18     contracts' in connection with the sale of retail products" ["the merchant class"]—in a single putative class

19     action in state court.  *Tapscott*, 77 F.3d at 1355.  One defendant filed a notice of removal on the basis of

20

21     _____

22          [9]      SAFECO argues that, under 28 U.S.C. § 1447(c), a motion to remand must be made within 30 days of the removal notice if its asserts a procedural, as opposed to a jurisdictional, defect.

23     Because it is undisputed that more than 30 days passed between the motion to remand and the removal notice, SAFECO claims that plaintiffs and Zurich and Maryland waived their right to contest removal on the grounds that AMCO and SAFECO are not "defendants" under section 1441.  However, SAFECO cites

24     no case that holds that remanding without the authority to do so is a procedural defect.  In any event, because the court ultimately holds that it lacks diversity jurisdiction, SAFECO's claim does not affect the

25     outcome here.

26          [10]      Courts sometimes refer to the "sham defendant" situation as "fraudulent joinder."  *See, e.g.,*

27     *Emrich v. Touche Rosse & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).  Due to the similarity of the terms "fraudulent joinder" and "fraudulent misjoinder," the court will use the phrase "sham defendant" to

28     describe the former scenario.

    ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
    MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
    DOH

diversity. *Id*. The district court granted the motion, holding that "there was an 'improper and fraudulent joinder, bordering on a sham.'" *Id*. at 1360. The Eleventh Circuit affirmed, reasoning that plaintiffs made no attempt to justify the propriety of the joinder, thus elucidating that their conduct was fraudulent:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.' Although certain putative class representatives may have colorable claims against resident defendants in the putative 'automobile' class, these resident defendants have no real connection with the controversy involving . . . the putative 'merchant' class action. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that [plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder.

*Id*. (citations omitted). The Fifth Circuit has also adopted the fraudulent misjoinder doctrine, albeit in a cursory one-paragraph opinion. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002).

However, the one California case to address the issue, *Osborn v. Metropolitan Life Ins. Co*, 341 F. Supp. 2d 1123 (E.D. Ca. 2004), refused to recognize the fraudulent misjoinder doctrine.[11] In *Osborn*, two California residents sued a California insurance company ("First American"), and a non-California insurance company ("Met Life") in California state court. After Met Life removed the action to federal court, plaintiffs filed a motion to remand. Met Life opposed the motion, citing *Tapscott* for the proposition that plaintiffs "fraudulently misjoined" the two insurance companies to destroy diversity jurisdiction. Reasoning that "the last thing the federal courts need is more procedural complexity," the court held that "the better rule [is to] require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court." *Id*. at 1127. In a footnote, the court explained that this could be accomplished without prejudice to Met Life's ability to seek removal later:

> [T]he time limit for removal would not affect a defendant's ability to have the misjoinder issue resolved in state court first. 'Removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action, the thirty-day time limit for

---

[11] *See also Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003 (declining to rule on *Tapscott*'s applicability but noting that "no other circuit has adopted its rationale").

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

8

removal (but not the overall one-year limit for diversity cases) would not begin to run until that had occurred and thus a requirement that misjoinder be addressed in the state court would not impair the ability of an individual to remove an action following the elimination of the improperly joined party.'

*Id*. at 1127 n.10 (quoting Wright, Miller & Cooper, *Jurisdiction* 3d § 3723 at 656).

AMCO and SAFECO argue that *Osborn* should not apply to this case because it "is based on the faulty premise that the thirty-day period for removal will not begin to run until all issues concerning misjoinder are resolved in state court."  AMCO Rep. Mot. Sev. at 4:3-4 (emphasis omitted).  AMCO and SAFECO posit that, contrary to *Osborn*, if they had challenged the validity of the Karamanos cross-complaint in state court, the thirty-day limit would have lapsed.  The court disagrees.  The removal statute carves out an exception for cases where the possibility of removal arises later in the lawsuit:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action.

28 U.S.C.A. § 1446(b) ("section 1446(b)").  Here, "the case stated by the initial pleading"—whether construed as the entire dispute or the Karamanos cross-complaint—was "not removable."  Indeed, the point of AMCO and SAFECO's motion to sever is to *make* the Karamanos cross-complaint removable.  Thus, if AMCO and SAFECO successfully challenge the propriety of the Karamanos cross-complaint in state court, they will receive an "order . . . from which it may first be ascertained that the case . . . has become removable."  Only then would the thirty-day clock begin to run on their ability to remove the Karamanos cross-complaint.

In any event, even if this court were to adopt *Tapscott*, it would not apply the fraudulent misjoinder doctrine here.[12]  The court reads *Tapscott* to apply in the rare circumstance where the egregiousness of plaintiffs' misjoinder is readily apparent.  Indeed, the Eleventh Circuit made clear that fraudulent misjoinder requires more than "mere misjoinder," and applied the doctrine to a case where plaintiffs did not even

---

[12]    Of course, applying *Tapscott* here would not only necessitate recognizing the doctrine, but extending it.  This case involves the issue of whether Karamanos properly brought *cross-complaints* against AMCO and SAFECO, not whether he purposefully *joined* additional defendants to destroy diversity jurisdiction.

1   attempt to justify their conglomeration of various unrelated defendants. *Tapscott*, 77 F.3d at 1360.

2   Conversely, Karamanos has at least a colorable claim that his cross-complaint against AMCO and

3   SAFECO was proper.  California Code of Civil Procedure section 428.10[13] permits cross-complaints

4   against a wide range of individuals:

5          A party against whom a cause of action has been asserted in a complaint or cross-
        complaint may file a cross-complaint setting forth either or both of the following:
6          . . .
        (b) Any cause of action he has against a person alleged to be liable thereon, whether or not
7       such person is already a party to the action, if the cause of action (1) arises out of the same
        transaction, occurrence, or series of transactions or occurrences as the cause brought
8       against him or (2) asserts a claim, right, or interest in the property or controversy which is
        the subject of the cause brought against him.

9    Because Karamanos' cross-complaint against AMCO and SAFECO arguably "asserts a claim, right or

10  interest" in the Maryland and Zurich cross-complaint—the right to indemnity and subrogation—it is

11  nowhere near as blatantly merit-less as plaintiffs' joinder efforts in *Tapscott*.

12         AMCO and SAFECO vigorously contend otherwise.  First, AMCO and SAFECO cite *Pena v.*

13  *McArthur*, 889 F. Supp. 403 (E.D. Cal. 1994) for the proposition that actions against insurance

14  companies for breach of contract or bad faith often bear only a tenuous connection to their underlying

15  claims.  In that case, Pena was involved in a car accident with an uninsured motorist, McArthur.  State

16  Farm insured Pena.  Pena filed a complaint in state court against McArthur for negligence and State Farm

17  for bad faith handling of her insurance claim.  Defendants removed the case and filed a motion to sever the

18  two causes of action under Federal Rule of Civil Procedure 21.  The court granted the motion, reasoning

19  that the negligence claim and the bad faith claim only superficially involved the same "transaction,

20  occurrence, or series of transactions or occurrences":

21         [T]here were two occurrences or transactions—the automobile accident between plaintiff
        and McArthur and the alleged breach of fiduciary duty by State Farm in handling plaintiff's
22      claim.  These are two distinct torts (negligence and bad faith claim) committed by different
        defendants at different times, and they resulted in the invasion of separate legal interests .
23      . . .  Here, plaintiff argues that proof of the bad faith claim will require analysis of the
        underlying negligence claim.  However, 'analysis' of the underlying claim in the bad faith
24      action is not identical to the underlying negligence claim itself.

25

26  _____

27         [13]      The court agrees with *Osborn* that state procedural law should apply, as the question is
    whether AMCO and SAFECO were properly joined in the first place.  *See Osborn*, 341 F. Supp. at 1128
28  ("most courts looking at this issue have applied the state rule").

1    *Id.* at 405-06.

2          However, *Pena* considered the propriety of joinder under Federal Rule of Civil Procedure 20,

3    which is significantly narrower than its state-law counterparts.  *Compare* Fed. R. Civ. P. 20(a) ("[a]ll

4    persons . . . may be joined in one action as defendants if there is asserted against them . . . any right to relief

5    in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and

6    if any question of law or fact common to all defendants will arise in the action) *with* Cal. Code Civ. P. §

7    428.10 (permitting cross-complaints that either "aris[e] out of the same transaction, occurrence, or series of

8    transactions or occurrences" or involve "a claim, right, or interest in . . . property" in the underlying claims);

9    *and* Cal. Code Civ. P. § 379 (permitting joinder of defendants "if there is asserted against them: (1) [a]ny

10   right to relief jointly, severally or in the alternative, in respect of or arising out of the same transaction,

11   occurrence, or series of transactions or occurrences . . . or (2) [a] claim, right, or interest adverse to them

12   in the property or controversy which is the subject of the action").  State law recognizes both the potential

13   for cross-claims and joinder in situations where federal law does not: where "a claim, right, or interest" links

14   the new party with the existing lawsuit.  *Pena* is thus inapposite.

15         Next, AMCO and SAFECO argue that the Karamanos cross-complaint was improper because it

16   has no relationship with either the with the bad faith case or the Zurich and Maryland cross-complaint.

17   AMCO and SAFECO contend that they only insure MSI and Karamanos in his capacity as an officer and

18   director of MSI.  AMCO and SAFECO also claim that neither the bad faith case nor the Zurich and

19   Maryland cross-complaint involve MSI or Karamanos in his official capacity.  Instead, they assert, the bad

20   faith case and the Zurich and Maryland cross-complaint involve HVAC, AMT, and Karamanos as an

21   officer and director of those companies.  Thus, according to AMCO and SAFECO, "the two disputes

22   involve distinct torts, committed by different defendants at different times, allegedly resulting in the invasion

23   of separate legal interests."  AMCO Mot. Sev. at 14:15-18.

24         This argument is unconvincing.  For one, AMT apparently ceased its business operations and sold

25   its assets to MSI in June 2000.  Negrych Decl. Supp. Rep. Mot. Rem. ¶¶ 2-5.  At that time, Karamanos

26

27

28

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

1   served as MSI's president.  Karamanos Decl. Supp. Rep. Mot. Rem. ¶¶ 1-5.[14]  The NSW cross-

2   complaint alleges that Karamanos engaged in wrongdoing "in 2001," when he ostensibly was acting as

3   MSI's president.  Borovsky Decl. Ex. B, at ¶ 8.  SAFECO's policy with MSI ended on September 1,

4   2001, while AMCO's policy ended on February 20, 2002.  Goettsch Decl. Ex. A.  Thus, because

5   Karamanos may have been insured by AMCO and SAFECO when he allegedly broke the law, he has a

6   non-frivolous claim that the Zurich and Maryland cross-complaint triggers his policy with AMCO and

7   SAFECO.  Borovsky Decl. Ex. G at ¶¶ 86, 87, 90, 91.  Moreover, even if AMCO and SAFECO are

8   correct that they were brought into the lawsuit incorrectly, that alone is not sufficient under *Tapscott* to

9   invest this court with jurisdiction where otherwise it would have none.[15]

10          **C.    Motion for Attorney's Fees**

11          Plaintiffs move for an award of attorney's fees in connection with the improper removal.  Under 28

12   U.S.C. § 1447(c), district courts may "require payment of just costs and any actual expenses, including

13   attorney fees, incurred as a result of the removal."  The court declines to do so.  Although this court

14   concludes that removal was improper, AMCO and SAFECO asserted tenable legal positions.  *See*

15   *Schmidt*, 780 F.Supp. at 704 (rejecting a fee request because "[t]he minority position regarding third-party

16   removal  is a plausible legal and factual basis for asserting removal jurisdiction").  Most courts that have

17   awarded fees have done so when a defendant should have been aware that removal was improper.  *See*

18   *Ciolino*, 2003 WL 21556959 at *8-*9 (awarding fees when defendant did not file timely notice of removal

19   or proof of service).  That is not the case here.

20

21

22

23

---

24          [14]     AMCO and SAFECO challenge the admissibility of Dean C. Burnich's declaration in
25   support of Zurich and Maryland's motion, apparently under the mistaken belief that striking it will cast doubt
     on the relationship between MSI, Karamanos, and AMT.  However, Karamanos and his counsel also
26   submitted declarations providing these facts.

27          [15]     AMCO and SAFECO also argue that this court enjoys broad discretion to sever the
     Karamanos cross-complaint.  However, they cite no authority for the proposition that a federal court may
28   bootstrap the exercise of its own jurisdiction from a *nunc pro tunc* severance order.

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

1

**III.  ORDER**

2

     For the foregoing reasons, the court grants and denies the motions as follows:

3

     1.  The court denies AMCO and SAFECO's motions to sever the Karamanos cross-complaint

4

without prejudice to their ability to renew the motion in state court.

5

     2.  The court grants plaintiffs' and Zurich and Maryland's motion to remand the entire dispute.

6

     3.  The court denies plaintiffs' motion for attorney's fees.

7

8

9

DATED:     7/25/05                      /s/ Ronald M. Whyte

10

                                               RONALD M. WHYTE
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO REMAND CASE TO STATE COURT, DENYING MOTION TO SEVER, AND DENYING
MOTION FOR ATTORNEY'S FEES—C-04-03615 RMW
DOH

1  **Notice of this document has been electronically sent to:**

2

3  **Counsel for Plaintiffs:**
   Zane D. Negrych          zanenegrych@sbcglobal.net

4  **Counsel for Zurich and Maryland:**
   Robert Lee Sallander     rsallander@gpsllp.com
5  Dean C. Burnick          dburnick@gpsllp.com

6  **Counsel for AMCO and SAFECO:**
   David P. Borovsky        dborovsky@longlevit.com
7  Karen L. Uno             kuno@longlevit.com
   Raymond H. Goettsch      goe@darlaw.com
8
   **Counsel for NSW**
9  Lisa D. Wright           lwright@alr-law.com

10

11  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

12
    **Dated:**      _7/25/05_                    _DOH_
13                                               **Chambers of Judge Whyte**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28